Filed 2/27/13  P. v. Martinez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G045719 |
| v. | (Super. Ct. No. 08NF3251) |
| RAUL JORGE MARTINEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, James A. Stotler, Judge.  Affirmed.

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

This gang confrontation and shooting case raises a single issue, centered on whether the trial court had a sua sponte duty to instruct the jury based on a recondite statement in *People v. Garcia* (2008) 162 Cal.App.4th 18, 31, that "an unlawful killing during the commission of an inherently dangerous felony, even if unintentional, is *at least* voluntary manslaughter." (Italics added; see also *id*. at p. 22 [same statement in introduction of opinion].)

The answer is no. Whatever mysteries are inherent in *Garcia's* "at least" comment, they have no application to the case before us. *Garcia* was a highly unusual case in which a gun was *not* used *as* a gun, but as a blunt instrument: the victim was hit in the face with its butt, fell to the sidewalk and died of head trauma. The *Garcia* court affirmed the conviction as against the defendant's argument that he was entitled to instructions on *in*voluntary manslaughter, but its task was made difficult by the semantic anomaly that the use of the butt of a gun as a blunt instrument made the crime, literally, an "assault . . . with a firearm," hence an "inherently dangerous felony." (*Garcia, supra*, 162 Cal.App.4th at p. 22.) This case, by contrast, presents a semantically clean set of facts: Martinez fired into a crowd. His attorney argued he was acting rashly because of the heat of passion given a sudden quarrel (the crowd was group of rival gang members intent on doing him harm), and therefore could be convicted only of voluntary manslaughter. But the jury found him guilty of second degree murder. We affirm. These facts present no *Garcia* issue and therefore required no *Garcia* instruction.

BACKGROUND

The salient events concerning the shooting are straightforward. Late one night in 2003,[1] three Pauline Street gang members were standing near a staircase at a motel in West Anaheim. A half-dozen or so of the rival Barrio Small Town gang were in a room at the motel, partying. When members of the Small Town gang went outside to

---

[1]     Martinez was not apprehended until 2008.

2

have a cigarette, they confronted the Pauline Street contingent.  One of the Small Town gang members uttered the words of universal challenge among gang members, "where you guys from?" and a fight ensued.  Two of Martinez's Pauline Street cohorts soon ran, but Martinez pulled out a gun and fired it into the oncoming squad of Small Towners, killing one of them.

Martinez testified in his own defense at trial.  His side of the story was that when one of the Small Towners uttered the provocative "where you guys, from?" challenge, Martinez was in the process of pulling up his socks.  Then, suddenly, someone kicked him in the face and he fell to the ground.  His two compatriots ran up the stairs. When Martinez tried to follow, he was pulled back down.  He tried to cover his face as he was being hit and kicked by no less than five people.  While covering his face with his left arm, Martinez reached into the pocket of his hoodie with his right hand, pulled out a gun, and fired it once or twice, not looking, not aiming at anyone.  At that point he was able to make his escape.

He would not be caught until years later.  His trial took place in 2010, and the jury was instructed that sufficient provocation could reduce second degree murder to voluntary manslaughter.  It was also instructed it could find Martinez guilty of only voluntary manslaughter if he had acted because of a sudden quarrel or heat of passion (with the attendant qualification, of course, that he had acted like a person of average disposition).  In this vein the jury was also told the prosecution had the burden of showing Martinez did not kill as the "result of a sudden quarrel or in the heat of passion," and if it did not carry the burden Martinez could not be found guilty of murder.

The jury was also told it could find Martinez acted in imperfect self-defense if he believed he was in imminent danger of being killed or suffering great bodily injury and he actually believed the use of deadly force was necessary to defend against that danger, even if his belief was unreasonable.  And the jury was further told that if it did

3

find Martinez acted in imperfect self-defense, it could not convict him of murder, but only voluntary manslaughter.

The jury returned a verdict of second degree murder and street terrorism. With firearm and gang enhancements, Martinez was sentenced to life with possibility of parole, plus a consecutive term of 25 years to life.

DISCUSSION

In Martinez's opening brief, he asserts that *People v. Garcia, supra*, 162 Cal.App.4th 18 "held that an unintentional killing without malice, committed during the course of an inherently dangerous assaultive felony, constitutes voluntary manslaughter."[2] Presumably, that formulation of what *Garcia* supposedly held is the precise jury instruction he now asserts should have been given sua sponte to the jury. But that is not the whole story of *Garcia* and is not the law to be applied here.

A trial court is under no duty to instruct the jury sua sponte on "every possible theory that may fit the facts of the case before it" (*People v. Wade* (1959) 53 Cal.2d 322, 334). But we need not decide the case on that basis because in this case the proffered instruction doesn't fit the facts of the case at all.

This is *not* a case of an "unintentional killing *without* malice, committed during the course of an inherently dangerous assaultive felony." (Italics added.) What Martinez forgets is that there is a major qualitative difference between what happened in *Garcia* and what happened here. In *Garcia*, the perpetrator used the *butt* of a shotgun to ward off an attacker who was in the process of lunging at him. (*Garcia, supra*, 162

---

[2]    In fact, *Garcia* never said "an unintentional killing without malice, committed during the course of an inherently dangerous assaultive felony, constitutes voluntary manslaughter." The phrase "without malice" is missing in the original *Garcia*, and the court inserted an enigmatic "at least" into its statement. What *Garcia* said, precisely, was: "An unlawful killing during the commission of an inherently dangerous felony, even if unintentional, is *at least* voluntary manslaughter." (*Garcia, supra*, 162 Cal.App.4th at p. 22, italics added; see also *id*. at p. 31 ["an unlawful killing during the commission of an inherently dangerous felony, even if unintentional, is at least voluntary manslaughter"].)

4

Cal.App.4th at p. 23.)  Thus the defendant in the *Garcia* court could plausibly argue there really had been no "malice."  (See *id*. at p. 26.)

By contrast, in this case *Martinez fired into a crowd*.  And the law has been clear for over a century that when someone fires into a crowd, malice is implied.  (See *People v. Stein* (1913) 23 Cal.App. 108, 114-115 ["It does not follow, merely because the defendant might not perhaps have entertained any personal ill-will toward the deceased, that the shooting and killing of the latter was not with the malice essential to the consummation of the crime of murder.  The deliberate and unnecessary discharging of a gun into a multitude of people, with an utter disregard of the consequences of the act, whereby human life is destroyed, is murder, and malice will be implied, although the perpetrator of the act had no malice against any particular person of the multitude into which he so fired."]; *In re Londale H.* (1992) 5 Cal.App.4th 1464, 1467 ["The deliberate discharge of a firearm into a multitude of people with utter disregard of the consequences is an inherently dangerous act likely to result in death or great bodily harm. . . .  Where such act results in death, malice will be implied, although the perpetrator of the act had no malice against any particular person in the crowd into which he fired."].)

To the degree the evidence showed the possibility Martinez did not have a malicious mental state because his shot was the result of a sudden quarrel or a fear for his life, the jury was properly instructed.  (See *People v. Lasko* (2000) 23 Cal.4th 101, 104.)  Had they accepted that version of the facts, the instruction would have provided a path to an appropriate verdict.  But *Garcia* would not have reduced the set of facts to an involuntary manslaughter.

Finally, we stress how inapposite *Garcia* is to this case.  The main point on appeal in *Garcia* was whether, given the absence of malice, the defendant was entitled to an instruction which might have allowed the jury to convict him only of *in*voluntary manslaughter.  (*Garcia, supra*, 162 Cal.App.4th at p. 26 ["Rather, he argues the jury should have been offered the option of convicting him of involuntary manslaughter

5

instead because there was substantial evidence the killing of Gonzalez was committed without malice and without either an intent to kill or conscious disregard for human life and, therefore, was neither murder nor voluntary manslaughter."].)  Context is everything, and in context, the point of *Garcia's* cryptic "at least" language was that the defendant there was *not* entitled to an involuntary manslaughter instruction.  A fortiori, here, where the defendant's conduct was more culpable than in *Garcia* and where malice was established by the act of firing a gun into a crowd, no such instruction was required.

DISPOSITION

The judgment is affirmed.

BEDSWORTH, ACTING P. J.

WE CONCUR:

IKOLA, J.

THOMPSON, J.